UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TORY T.,[1] | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | )   No. 1:21-cv-02451-TWP-MG |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| *Defendant.* | ) |

**REPORT AND RECOMMENDATION**

In September 2019, Plaintiff Tory T. applied for applied for social security disability benefits ("DIB") from the Social Security Administration ("SSA"), alleging a disability onset date of October 16, 2018. [Filing No. 7-5 at 7-16.] His application was initially denied on January 8, 2020, [Filing No. 7-3 at 2-15; Filing No. 7-4 at 3-11], and upon reconsideration on June 17, 2020, [Filing No. 7-3 at 16-31; Filing No. 7-4 at 15-21]. Administrative Law Judge Livia Morales (the "ALJ") conducted a hearing on March 17, 2021. [Filing No. 7-2 at 35-62.] The ALJ issued a decision on April 12, 2021 concluding that Tory T. was not entitled to receive benefits. [Filing No. 7-2 at 18-34.] The Appeals Council denied review on July 21, 2021. [Filing No. 7-2 at 2-6.] On September 17, 2021, Tory T. filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

The Court referred this matter to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b). [Filing No. 13.] For the following reasons, the undersigned recommends that the Court remand the decision of the ALJ for further proceedings.

## I.
## STANDARD OF REVIEW[2]

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, __U.S.__, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id.* For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built

---

[2] The regulations governing disability determinations for benefits under Title II and Title XVI are identical in virtually all relevant respects unless otherwise noted.

2

an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at step four to determine whether the claimant can perform his or her own past relevant work and if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for steps one through four; only at step five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's

decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Tory T. was 44 years old on October 16, 2018—the date of his alleged onset of disability—and has a limited education. [Filing No. 7-2 at 22.] He previously worked on an automotive assembly line, as a warehouse picker for a beer distribution company, and as a maintenance worker. [*See* Filing No. 7-2 at 44-46.] Tory T.'s original application alleges that he can no longer work because he suffers from arthritis, bulging/herniated discs in his low back, bilateral hip pain, diabetes, and depression. [Filing No. 7-6 at 6.] Following the March 17, 2021 hearing, the ALJ followed the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520(a)(4) and concluded that Tory T. was not disabled. Specifically, the ALJ found as follows:

- At Step One, Tory T. had not engaged in substantial gainful activity[3] during the period at issue. [Filing No. 7-2 at 23.]

- At Step Two, Tory T. has the following severe impairments: degenerative disc disease of the lumbar spine and right hip bursitis, and he has the following non-severe impairments: diabetes mellitus, diabetic neuropathy, and tobacco use. [Filing No. 7-2 at 23.]

---

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

- At Step Three, Tory T. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 7-2 at 25.]

- After Step Three but before Step Four, Tory T. had the RFC "to perform light work as defined in 20 CFR 404.1567(b) with the following additional limitations: stand/walk four hours in an eight hour workday; frequent balancing; occasional stooping, kneeling, crouching, crawling, and climbing of stairs or ramps; no climbing of ropes, ladders, or scaffolds; avoid unprotected heights; frequent work around moving mechanical parts; frequent motor vehicle operation; and ability to alternate between sitting and standing at will without any loss of production." [Filing No. 7-2 at 25.]

- At Step Four, Tory T. could not perform any of his past relevant work. [Filing No. 7-2 at 28.]

- At Step Five and relying on the VE's testimony and considering Tory T.'s age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could perform, such as small products assembler, sub assembler, and production assembler. [Filing No. 7-2 at 28-29.]

### III.
### DISCUSSION

Tory T. raises a single issue for the Court's review. He contends that the ALJ's evaluation of his subjective symptoms failed to follow the requirements of SSR 16-3p.

First, Tory T. contends that the ALJ erred by not including the required findings about his subjective symptoms in the decision. [Filing No. 9 at 16 ("While most decisions include at least a boilerplate statement that the claimant's statements are not entirely consistent with the evidence, here the ALJ failed to make any findings regarding the consistency of [Tory T.'s] statements.").] Second, he argues that the ALJ failed to consider all factors identified in SSR 16-3p. [Filing No. 9 at 19.] Next, he contends that while the ALJ described Tory T.'s treatments as "conservative," in fact his treatments, which include multiple spinal injections, were not conservative. [Filing No. 9 at 17.] He further argues that "[t]he ALJ characterized the treatment as conservative, yet never explained how or why this diminished the severity of his symptoms." [Filing No. 9 at 17-18.] The

5

lack of these explanations, Tory T. contends, renders the ALJ's decision "devoid of the necessary and mandated level of articulation required to show an accurate and logical bridge between the evidence and the result." [Filing No. 9 at 18 (internal quotation marks omitted).]

In response, the Commissioner contends that Tory T.'s arguments about the ALJ's subjective symptom analysis fail because "he did 'not identify any objective evidence in the record corroborating' his alleged limitations," and therefore any error is harmless. [Filing No. 11 at 5-6 (quoting *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021) (internal alteration omitted).] While the Commissioner tacitly acknowledges in a footnote that the ALJ did not explicitly make a "finding," about Tory T.'s subjective symptoms, she says that is of no matter because the ALJ "adhered to 20 C.F.R. § 404.1529 and SSR 16-3p," by "appropriately considering relevant factors [and] concluding[ing] that despite [Tory T.'s] allegedly disabling symptoms, he remained capable of working." [Filing No. 11 at 6-7 n.1.] The Commissioner says the ALJ properly cited "[n]ormal findings" from various physical exams of Tory T. and Tory T.'s treatment history as reasons to discount Tory T.'s testimony. [Filing No. 11 at 7-8.] The Commissioner contends that it was appropriate for the ALJ to describe Tory T.'s treatment as "conservative" and cites consultative examiner Dr. Ami Rice, M.D.'s statement that Tory T's low back pain was "conservatively managed" and Tory T.'s "own failure to submit any medical records dated after May 2020." [Filing No. 11 at 9.]

In reply, Tory T. simply says that harmless error does not apply here. [Filing No. 12 at 2.]

An ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. *Shidler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). Nevertheless, the ALJ must provide specific reasons supporting his or her evaluation that are supported by the record. *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013).

SSR 16-3p addresses the method by which ALJs should "evaluate statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims." SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). SSR 16-3p eliminates "the use of the term 'credibility'" from the evaluation process and clarifies that "subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation." *Id.* at *1. SSR 16-3p instructs ALJs to use the following method to evaluate statements regarding the intensity, persistence, and limiting effects of symptoms:

> Consistent with our regulations, we instruct our adjudicators to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms *after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms*. We evaluate the intensity and persistence of an individual's symptoms so we can determine how symptoms limit ability to perform work-related activities for an adult.

*Id.* at *2 (emphasis added).

Thus, ALJs use a two-step process to evaluate an individual's subjective symptoms. First, an ALJ must "determine" whether a claimant has "an underlying medically determinable physical or mental impairment that could reasonably be expected to produce an individual's symptoms." *Id.* at *3. The regulations are clear that ALJs are expected to make a specific "finding" on this issue. *See also* 20 C.F.R. § 404.1529(b) ("The *finding* that your impairment(s) could reasonably be expected to produce your pain or other symptoms ….") (emphasis added).

If the claimant is found to have such a medically determinable impairment at step one, the ALJ moves to step two where the ALJ must consider all of the evidence in the record to evaluate the intensity and persistence of an individual's symptoms and "determine" "the extent to which an individual's symptoms limit his or her ability to perform work-related activities." SSR 16-3p, 2017 WL 5180304, at *4. To conduct this analysis at the second step, SSR 16-3p instructs as follows:

> In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; and individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

*Id.*

Ultimately, the ALJ must explain the subjective symptom analysis "in such a way that allows [a court] to determine whether [the ALJ] reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (internal quotations omitted). And, "[n]ot all of the ALJ's reasons must be valid," to uphold a subjective symptom finding, "as long as enough of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009).

At his hearing, Tory T. testified that he cannot sit for an extended period because of his back pain, and because of this, he only rides in the car for short distances. [Filing No. 7-2 at 42-43.] He said that he stopped working in October 2018 because of back pain. [Filing No. 7-2 at 47.] He told the ALJ that he tries to do chores around the house that can be accomplished without bending, and that he uses to grabbing tool to assist him in picking up items. [Filing No. 7-2 at 47-48.] He is able to take care of his hygiene needs, but he can only sit upright for about two hours and stand for about two hours at a time. [Filing No. 7-2 at 48.] He reported being able to walk about 20 minutes at a time. [Filing No. 7-2 at 48.] He said that his back pain is largely concentrated in his low back but there are instances in which the pain will shoot down his leg or up towards his shoulders. [Filing No. 7-2 at 49-50.] He reported taking Gabapentin to for his back pain, which he said helped "somewhat." [Filing No. 7-2 at 50.]

In her decision, the ALJ acknowledged that she was required to evaluate Tory T.'s subjective symptoms about his pain by reference to SSR 16-3p and 20 C.F.R. § 404.1529.

> In making this [RFC] finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p. I have also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c.
>
> In considering the claimant's symptoms, I must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, I must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

[Filing No. 7-2 at 25.] Despite acknowledging and outlining the two-step process for evaluating Tory T.'s reported symptoms, the ALJ did not circle back and make the required findings. Instead, after the above recitation, the ALJ summarized the record evidence for purposes of explaining the RFC and did not return to make findings under SSR 16-3p about Tory T.'s stated symptoms. [Filing No. 7-2 at 25-27.]

The ALJ did not state whether Tory T.'s medical impairments could "reasonably be expected to produce [his] pain or other symptoms." The Court is left guessing as to what the ALJ concluded on this front. At one point, the ALJ observed that Tory T.'s "low back pain was not clearly associated with diagnostic findings" and elsewhere that physical exams were "unremarkable." [Filing No. 7-2 at 26.] But, at no point does the ALJ state whether Tory T.'s severe impairments (degenerative disc disease and right hip bursitis) or non-severe impairments (diabetes, diabetic neuropathy, and tobacco use) could reasonably be expected to produce his stated

9

symptoms, and thus the Court is unable to trace the ALJ's reasoning, and this omission is error. *See Plessinger v. Berryhill*, 900 F.3d 909, 916 (7th Cir. 2018) (remanding where the ALJ's subjective symptom finding contained gaps in the reasoning). *Cf. Dowling v. Comm'r of Soc. Sec.*, 986 F.3d 377, 387 (4th Cir. 2021) ("[A]n RFC assessment is a separate and distinct inquiry from a symptom evaluation, and the ALJ erred by treating them as one and the same.").

Assuming *arguendo* that the failure to articulate the "findings" required by SSR 16-3p, is not an error requiring remand, there is another problem: the reasons suggested by the ALJ for discounting some of Tory T.'s stated symptoms are insufficient. The ALJ's decision suggested two reasons for discounting Tory T.'s testimony: (1) the lack of supporting medical evidence; and (2) Tory T.'s "conservative" treatment of his symptoms. [*See, e.g.*, Filing No. 7-2 at 26 ("Physical examinations were largely unremarkable and diagnostic findings inconsistent with the degree of limitation alleged by the claimant. *** The claimant has only received conservative treatment without any exacerbations requiring emergency room treatment or hospitalization.").] It is well-settled that an ALJ cannot discount a claimant's symptoms of pain based on medical evidence (or the lack thereof) alone. *See Vanprooyen v. Berryhill*, 864 F.3d 567, 572 (7th Cir. 2017); SSR 16-3p, 2017 WL 5180304, at *5 (instructing ALJs that they cannot "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual").

So, the ALJ must have another valid reason for discounting a claimant's stated symptoms. The nature and frequency of treatment sought by a claimant is an appropriate consideration. *See, e.g.*, 20 C.F.R. § 404.1529(c)(3). The ALJ references Tory T.'s "conservative" treatment, but fails to discuss Tory T.'s repeated steroid epidural injections and nerve block that failed to provide any

long-lasting relief, [*see, e.g.*, Filing No. 7-7 at 29 (Nov. 6, 2018 epidural injection); Filing No. 7-7 at 31 (Dec. 18, 2018 epidural injection); Filing No. 7-7 at 33 (Jan. 31, 2019 lumbar medial branch block injection and epidural); Filing No. 7-7 at 104 (Apr. 10, 2019 sacroiliac joint injections)], and his ongoing treatment with Gabapentin, [*see e.g.*, Filing No. 7-2 at 50]. The ALJ does not confront this evidence or explain why these treatments are conservative and serve to undermine Tory T.'s testimony about his symptoms, and this failure is error. *See Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) ("The ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected."). The Court passes no judgment on the nature of these treatments and instead only finds that the ALJ had an obligation to discuss them, or at least acknowledge them, in reaching her conclusion that Tory T. received conservative treatment.

The ALJ's errors in evaluating Tory T.'s subjective symptoms are not harmless. The omission of findings required by SSR 16-3p and explanations would require the Court itself to fill in the logical gaps in the ALJ's decision. And, such gap-filling is not allowed because the Court is forbidden from adopting reasoning not articulated by the ALJ. *See Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)) ("Under the *Chenery* doctrine, the Commissioner's lawyers cannot defend the agency's decision on ground that the agency itself did not embrace.")

Because the ALJ failed to make the required findings under SSR 16-3p and provide good reasons supported by the record to doubt Tory T.'s subjective symptoms, the undersigned finds the ALJ's evaluation is patently wrong, requiring reversal and remand.

## IV.
### CONCLUSION

For the reasons detailed above, the undersigned recommends the Court **REVERSE** the Commissioner's decision denying Tory T. benefits and **REMAND** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence 4) as detailed above.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Failure to file timely objections within fourteen (14) days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Date: 8/8/2022

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record.**